# Exhibit B

CRIMINAL CAUSE FOR PLEADING                    1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - -X
UNITED STATES OF AMERICA,   :   12-CR-00720(CBA)
                            .
                            .
                            .
                            .
    -against-               :   United States Courthouse
                            :   Brooklyn, New York
                            .
                            .
                            .
                            .
QUAZI MOHAMMAD REZWANUL      :   Thursday, February 7, 2013
AHSAN NAFIS,                 :   12:00 p.m.
                            .
        Defendant.          :
- - - - - - - - - - - - - - - -X

TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
BEFORE THE HONORABLE CAROL BAGLEY AMON
UNITED STATES CHIEF DISTRICT COURT JUDGE

A P P E A R A N C E S:

For the Government:    LORETTA E. LYNCH, ESQ.
                       United States Attorney
                       Eastern District of New York
                            271 Cadman Plaza East
                            Brooklyn, New York 11201
                       BY:  JAMES P. LOONAM, ESQ.
                            RICHARD TUCKER, ESQ.
                            Assistant United States
                            Attorneys

For the Defendant:     FEDERAL DEFENDERS OF NEW YORK
                       Attorneys for the Defendant -
                       QUAZI MOHAMMAD REZWANUL AHSAN NAFIS
                            One Pierrepont Plaza
                            16th Floor
                            Brooklyn, New York  11201
                       BY:  HEIDI C. CESARE, ESQ.

Court Reporter:    Lisa Schwam, CSR, CRR, RMR
                   Official Court Reporter
                   Telephone: (718) 613-2268


Proceedings recorded by computerized stenography.  Transcript
produced by Computer-Aided Transcription.

CRIMINAL CAUSE FOR PLEADING                    2

(In open court.)

THE COURTROOM DEPUTY:  United States against Nafis.

THE COURT:  Please be seated.

THE COURTROOM DEPUTY:  Please state your appearances for the record.

MR. LOONAM:  James Loonam and Richard Tucker for the United States.  Good afternoon, Your Honor.

THE COURT:  Good afternoon.

MS. CESARE:  Heidi Cesare, Federal Defenders of New York, for Mr. Nafis.

THE COURT:  Good afternoon.

Ms. Cesare, do you have an application?

MS. CESARE:  Yes.

THE COURT:  And what is that?

MS. CESARE:  Mr. Nafis has given me permission to advise the Court that he is prepared to plead guilty to Count One of the indictment, pursuant to a plea agreement with the government.

THE COURT:  All right.  Mr. Nafis, your attorney tells me that you wish to enter a guilty plea.  This is a very serious decision.  I have to make sure that you understand all of your rights and the consequences of the plea.  That means that I will have to ask you a whole series of questions.  I do require that your answers to my questions be made under oath so my courtroom deputy will

CRIMINAL CAUSE FOR PLEADING                3

administer an oath to you to tell the truth.

Would you rise, please, for that.

(Defendant sworn.)

THE COURT:  Having been sworn to tell the truth, you must do that.  If you were to lie on purpose in response to any question that I ask, you could face a further criminal charge for perjury or a false statement.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  If there's anything that I say that you don't understand, just tell me that you don't understand it, and I will try and make it plainer.

Is that clear?

THE DEFENDANT:  Yes.

THE COURT:  All right.  How old are you?

THE DEFENDANT:  I'm 21 years of age.

THE COURT:  How far in school did you go?

THE DEFENDANT:  I finished high school.  I was going to college.

THE COURT:  Are you presently or have you recently been under the care of a doctor, including a psychiatrist, for any reason?

THE DEFENDANT:  No.

THE COURT:  In the past 24 hours, have you taken any pills, drugs, medicine or alcohol of any kind?

CRIMINAL CAUSE FOR PLEADING                4

THE DEFENDANT:  No.

THE COURT:  Is your mind clear as you sit there today?

THE DEFENDANT:  Yes.

THE COURT:  Counsel, have you discussed the question of a guilty plea with your client?

MS. CESARE:  Yes, I have.

THE COURT:  In your view, does he understand rights he's waiving by pleading guilty?

MS. CESARE:  Yes, he does.

THE COURT:  Do you have any question about his competency to proceed?

MS. CESARE:  None whatsoever.

THE COURT:  Mr. Nafis, have you had enough time to discuss with your attorney this decision to enter a guilty plea?

THE DEFENDANT:  Yes.

THE COURT:  Are you satisfied to have her represent you?

THE DEFENDANT:  Yes.

THE COURT:  Now, have you read the charge in Count One of the indictment before?  Have you read it?

THE DEFENDANT:  Yes, I have.

THE COURT:  Have you discussed with your lawyer what it is the government would have to prove in support of

CRIMINAL CAUSE FOR PLEADING                    5

that charge?

THE DEFENDANT:  Yes, I have.

THE COURT:  All right.  I am now going to summarize the charge for you.

It charges in Count One that in or about 2012, within the Eastern District of New York and elsewhere, the defendant, Quazi Mohammad Rezwanul Ahsan Nafis, did knowingly, intentionally and without lawful authority attempt to use a weapon of mass destruction, to wit; an explosive bomb and similar device, against persons and property within the United States, to wit; the Federal Reserve Bank of New York and persons in and near the Federal Reserve Bank of New York, and one or more facilities of interstate and foreign commerce, to wit; mobile telephones and the Internet, were used in furtherance of the crime. Such property was used in interstate and foreign commerce, and in activity that affected interstate and foreign commerce, and the offense and the results of the offense would have affected interstate and foreign commerce.

So the government has to prove each of the elements of the crime that I just read to you. Specifically, that you knowingly and intentionally used what's defined as a weapon of mass destruction, which can be an explosive bomb or similar device, and that it was against persons or property and that's identified in this as the

CRIMINAL CAUSE FOR PLEADING                6

Federal Reserve Bank or persons near the Federal Reserve Bank, and the facilities of interstate commerce were used and that property was used in interstate and foreign commerce and that the offense and the results would affect interstate and foreign commerce.  The government would have to prove all of those elements by proof beyond a reasonable doubt.

Do you believe that you understand the charge?

THE DEFENDANT:  I do.

THE COURT:  What I would like to do now then is review with you the rights that you have.  These will be rights that you give up if you decide to plead guilty.

First of all, you have a right to persist in your original plea of not guilty to this charge.

Do you understand that?

THE DEFENDANT:  I understand.

THE COURT:  If you plead not guilty to the charge, you have a right under the Constitution and laws of the United States to a speedy and public trial before a jury with the assistance of your attorney.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  At any trial, you would be presumed innocent.  You don't have to prove your innocence.  Under our system of law, it is the government that has the burden

of proof, and that is proof beyond a reasonable doubt that you are guilty of all elements of the crime charged. If the government failed to meet the burden of proof, the jury would have the duty to find you not guilty.

Do you understand?

THE DEFENDANT: I understand.

THE COURT: In the course of a trial, witnesses for the government would have to come to this Court and testify in your presence. Your lawyer would have the right to cross-examine these witnesses. She could raise legal objections to evidence the government sought to offer against you. She could offer evidence in your behalf. And that includes the fact that you would have the right to subpoena witnesses and bring them to trial to testify in your behalf.

Do you understand that?

THE DEFENDANT: I understand.

THE COURT: Now, at the trial you would have the right to testify if you wanted to. On the other hand, you could not be forced to be a witness at your trial. Under the Constitution and laws of the United States, no person can be made to be a witness against himself. So if you wanted to go to trial but you decided not to testify, I would tell the jury they could not hold that fact against you.

CRIMINAL CAUSE FOR PLEADING                8

Do you understand?

THE DEFENDANT:  I do not understand what you said.

THE COURT:  You didn't understand it?

THE DEFENDANT:  No.

THE COURT:  All right.  Let me try and explain it perhaps more simply.

At trial, if you wanted to testify, tell the jury what you believe happened, you would have a right at your trial to take the stand and testify and explain your position to a jury.

Do you, first of all, understand that?

THE DEFENDANT:  I understand.

THE COURT:  But you could not be forced to be a witness at your trial.  In other words, if you decided you didn't want to testify, the government couldn't call you to the stand and make you testify.  You have a right not to incriminate yourself.

Do you understand?

THE DEFENDANT:  I understand.

THE COURT:  So if you went to trial and you made the decision that you didn't want to testify, then under the law I would tell the jury that they could not consider that fact against you that you didn't testify; in other words, that could not enter into their determination in the case.

So do you understand that now?

CRIMINAL CAUSE FOR PLEADING                         9

THE DEFENDANT:  I understand.

THE COURT:  Is it plain or do you want it explained any further?

THE DEFENDANT:  It's okay.  I got it.

THE COURT:  Okay.  Now, if instead of going to trial you plead guilty to the crime and I accept your guilty plea, that means you'll be giving up your right to a trial and all the other rights I've just discussed.  There will be no trial in the case and no right to any appeal on the question of whether you did or did not commit the crime.  I simply enter a judgment of guilty based upon your plea.

Do you understand?

THE DEFENDANT:  I understand.

THE COURT:  Now, if you did plead guilty, then I'm going to have to ask you questions about what you did in order to satisfy myself that you are guilty of the charge. You're going to have to answer my question and admit your guilt, so that means you'd be giving up that right that you have not to incriminate yourself.

Do you understand?

THE DEFENDANT:  I understand.

THE COURT:  Are you willing to give up your right to a trial and all the other rights I've just discussed?

THE DEFENDANT:  Yes.

THE COURT:  All right.  Now, I have before me a

CRIMINAL CAUSE FOR PLEADING                    10

document marked Government Exhibit 1, a plea agreement. It's a seven-page document dated February 7th of 2013.

THE COURT: Mr. Nafis, can you see that? Is that your signature?

THE DEFENDANT: That is mine.

THE COURT: All right. Now, did you read over the plea agreement before you signed it?

THE DEFENDANT: Yes, I did.

THE COURT: Did you discuss all of the provisions of the agreement with your attorney?

THE DEFENDANT: Yes, I did.

THE COURT: Do you believe you understand the agreement?

THE DEFENDANT: Yeah, I do.

THE COURT: Is there anything at all in this agreement that is not clear that you would need explained in any further detail now?

THE DEFENDANT: No.

THE COURT: Did the government make a promise to you that is not included in this agreement?

THE DEFENDANT: Can you ask me that question again.

THE COURT: Yes.

Did the government make a promise to you that is not included in this agreement?

CRIMINAL CAUSE FOR PLEADING                    11

THE DEFENDANT:  Made a promise to me?

THE COURT:  Some other promise.

THE DEFENDANT:  No.

THE COURT:  All right.  Let me just -- I should have asked earlier.

Let me ask the government.  Mr. Loonam, does the seven-page document before the Court contain the entirety of any understanding that your office has reached with this defendant?

MR. LOONAM:  It does, Your Honor.

THE COURT:  Ms. Cesare, that's your understanding as well?

MS. CESARE:  Yes.

THE COURT:  And Mr. Nafis, that's your understanding as well; is that correct?

THE DEFENDANT:  Yeah.

THE COURT:  All right.  I want to bring one part of the agreement specifically to your attention because it involves giving up another right that you have.  And it's in paragraph 4.

"The defendant agrees not to file an appeal or otherwise challenge by petition pursuant to 28, U.S.C., Section 2255, or any other provision, the conviction or sentence in the event that the Court imposes a term of imprisonment of life or below."

CRIMINAL CAUSE FOR PLEADING                12

So effectively what that means is, as I understand it, is you will not be able to appeal any sentence the Court imposes on you.

Do you understand that?

THE DEFENDANT:  I do.

THE COURT:  And that you will not be able to come back at a later time when you're in prison and challenge pursuant to a habeas corpus petition your conviction or sentence.

Do you understand you're giving up those rights?

THE DEFENDANT:  Yeah, I understand.

THE COURT:  Anyone threaten or force you to give up those additional rights or put pressure on you to give up your appeal rights?

THE DEFENDANT:  No.

THE COURT:  All right.  I'm now going to advise you of the maximum penalty on a guilty plea to Count One. The maximum term of imprisonment is life.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  When the Court imposes a prison term, I'm required to follow that prison term by a period of supervised release.  In this case, the term of supervised release can be as long as life.  If you were sentenced to a term of imprisonment less than life and then you got a

CRIMINAL CAUSE FOR PLEADING                    13

supervised release term, if you were released on that supervised release term and violated any terms or conditions of that supervised release, I would be able to send you back to prison for five full years without giving you any credit for the time you spent on supervised release.

Do you understand that?

THE DEFENDANT:  I understand.

THE COURT:  There are financial penalties associated with this offense.  The maximum fine is $250,000.

There is in addition a $100 special assessment. The Court is required to impose that $100 special assessment.  I have no discretion about that.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  There is a provision here about restitution.

Mr. Loonam, is there some question about restitution here?

MR. LOONAM:  No.  I don't expect there to be any restitution in this case, Your Honor.

THE COURT:  Now, the other penalties deal with deportation, I take it, at paragraph 6.  So by pleading guilty to this offense, if you received a prison term less than life and were released at some point in time, then you would be deported from the United States based on a guilty

CRIMINAL CAUSE FOR PLEADING                14

plea to this offense.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Now, in sentencing, the Court has to take into account a number of different factors, but one important factor that the Court has to take into account is what your Sentencing Guideline would be in your case.

Have you discussed Sentencing Guidelines with your attorney and how those Guidelines are calculated?

THE DEFENDANT: Yes.

THE COURT: Now, as I understand it, the government believes that the Guideline range would be 30 years to life; is that correct?

MR. LOONAM: That's correct, Your Honor.

THE COURT: Is that agreed upon or just the government's estimate here?

MS. CESARE: The plea agreement reflects the government's estimate, but I've advised Mr. Nafis that I do believe it is correct.

THE COURT: All right. An important thing that you need to consider, Mr. Nafis, is that this is what the government believes the Guideline range would be, 30 years to life, with a Criminal History Category of VI. You should understand that ultimately it's the Court's determination as to what the Guideline range is in a given case. I do not

CRIMINAL CAUSE FOR PLEADING                15

have enough information now before me in order to tell you what that calculation would be.  I will not have that until sentencing.

What happens is the probation department drafts a presence report.  The probation officer will calculate the Guideline range.  If the government thinks it's incorrect or if your lawyer thinks it's incorrect, arguments can be made to the Court about what the Guideline range should be.  But it's only after that entire process takes place that the Court can make a determination as to the Guideline range.  So it's possible that the range could be higher than what's in your letter.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Also, as I said, the Court is not governed -- is not required, rather, to follow that Guideline range.  It's an important factor.  But the Court also has to take into account other policy factors and other factual matters.  As to policy matters, the Court has to consider the seriousness of the offense, the need to promote respect for the law, to provide just punishment.  I also have to take into account your own history and characteristics, your background.  So those are just a number of the factors that the Court has to consider in sentencing.

CRIMINAL CAUSE FOR PLEADING                    16

Do you understand that?

THE DEFENDANT:  Yes, I do.

THE COURT:  You should understand that under the federal system, we have no parole boards or parole commissions so what that means is whatever sentence you do receive from the Court will be pretty close to the actual amount of time that you have to spend in prison.  You have no opportunity to appeal to parole boards to get out early.  There are no parole boards in this sentencing system.

Do you understand that?

THE DEFENDANT:  I do.

THE COURT:  Finally, if you enter a guilty plea today, your guilty plea will stand.  You cannot come back to court at the time of sentence and tell me you've changed your mind; you want to go to trial.  At that point it's too late.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Do you have any questions that you want to ask me about the charge, your rights, or anything else related to this matter that might not be clear?

THE DEFENDANT:  No.

THE COURT:  Counsel, is there anything further that you would like me to discuss with your client?

MS. CESARE:  No, thank you.

CRIMINAL CAUSE FOR PLEADING                    17

THE COURT:  Do you know any reason why he should not enter a guilty plea to Count One?

MS. CESARE:  No, Your Honor.

THE COURT:  Mr. Nafis, are you ready to plead?

THE DEFENDANT:  Yes.

THE COURT:  How do you plead to the charge in Count One; guilty or not guilty?

THE DEFENDANT:  Guilty.

THE COURT:  Are you making this plea of guilty voluntarily and of your own free will?

THE DEFENDANT:  Yes.

THE COURT:  Has anyone threatened, forced, or pressured you in any way to enter this plea of guilty?

THE DEFENDANT:  No.

THE COURT:  Other than the plea agreement with the government, has anyone made you any promise that has caused you to plead guilty?

THE DEFENDANT:  No.

THE COURT:  Has anyone promised you what sentence you will receive?

THE DEFENDANT:  No.

THE COURT:  All right.  I need to hear from you in your own words what you did in connection with the crime charged in Count One.

THE DEFENDANT:  On October 17, 2012, I attempted

CRIMINAL CAUSE FOR PLEADING                    18

to bomb the Federal Reserve Bank in downtown Manhattan.  I used a cell phone in my attempt to detonate the bomb.  I had intention to commit a violent Jihadist act before I met the informant or the undercover officer involved in this case. I'm the person who chose to target the Federal Reserve Bank. I no longer support violent jihad.  I deeply and sincerely regret my involvement in this case.

THE COURT:  Does the government believe that there needs to be any further inquiry with respect to the elements about the facilities of interstate and foreign commerce?

MR. LOONAM:  Your Honor, I would just proffer that the goal of the defendant's attack, according to him in his own words, was to target the U.S. economy and have an effect on the U.S. economy.

THE COURT:  First of all, is that correct what the prosecutor just said that the goal was to have an effect -- the goal of this act was to have an effect on the United States economy?

THE DEFENDANT:  That's correct.

THE COURT:  All right.

MR. LOONAM:  And certainly had a 1,000 pound bomb been detonated on Liberty Street next to the Federal Reserve, it would have had such an effect on interstate commerce.

THE COURT:  But there actually was, I believe, the

CRIMINAL CAUSE FOR PLEADING                    19

use of mobile telephones in connection with this case?

MR. LOONAM:  Correct, Your Honor.  The defendant attempted to detonate the device remotely by repeatedly dialing the cell phone that was used as the detonator.  And so by using the mobile phone, he attempted to set the bomb off.  And that was verified by the agents that the number had been called repeatedly.

THE COURT:  And with regard to venue?

MR. LOONAM:  Your Honor, there were numerous substantial steps taken in the Eastern District of New York. The defendant assembled the device in a warehouse that was located in the Eastern District of New York.

THE COURT:  Is that correct?  Did you assemble the device that the prosecutor has just mentioned in the Eastern District of New York?  It was in Brooklyn, you said?

MR. LOONAM:  It was within the Eastern District, Your Honor.

THE COURT:  So it was within either Brooklyn, Queens, Long Island or Staten Island?

MR. LOONAM:  Correct, Your Honor.

THE COURT:  Is that true that where you assembled the device was either in Brooklyn or Queens or Long Island, in one of those places?

THE DEFENDANT:  Yes.

MR. LOONAM:  In addition, Your Honor, prior to

CRIMINAL CAUSE FOR PLEADING                     20

entering Manhattan, the defendant armed the device by turning the cell phone on and attaching a battery to the detonator.

THE COURT:  In?

MR. LOONAM:  In Brooklyn.

THE COURT:  Is what the prosecutor just said correct about your having taken those activities in Brooklyn about arming the device?

THE DEFENDANT:  Yes.

THE COURT:  Do you believe that I need to make any further inquiry to establish a factual basis of the plea, Mr. Loonam?

MR. LOONAM:  No, Your Honor.  I would just represent that the defendant had no lawful authority with respect to using a weapon of mass destruction.

THE COURT:  Did anyone give you in the United States government give you any permission to do this act?

THE DEFENDANT:  No.

THE COURT:  Ms. Cesare, do you believe that I need to make any further inquiry to establish a factual basis for the plea?

MS. CESARE:  No.

THE COURT:  All right.  Based on the information given to me, I find that the defendant is acting voluntarily, that he fully understands the charge, his

CRIMINAL CAUSE FOR PLEADING                    21

rights and the consequences of his plea, and that there is a factual basis for the plea.  So I therefore accept the plea of guilty to Count One.

We've set the following schedule:  The PSI, presentence investigation report, will be disclosed to the parties on May 2nd of this year.  Any objections May 16th.  Any response by the government May 23rd.  We'll have sentencing on May 30th at 10:00.

Is there anything else that we need to take up, Mr. Loonam?

MR. LOONAM:  Nothing from the government, Your Honor.

MS. CESARE:  No, thank you.

THE COURT:  Okay.  And I received a letter, I think, from a reporter, I believe NBC Universal.

Will the government be responding to that letter?

MR. LOONAM:  We didn't intend to respond unless Your Honor believes a response is necessary.  The public record at this point is what it is.

THE COURT:  So I take it you're formally opposing the application?

MR. LOONAM:  Correct, Your Honor.  If there's a FOIA request, we could deal with the FOIA request in that context.  But at this time, either the request for the discovery materials, which are not public, the government

CRIMINAL CAUSE FOR PLEADING                    22

opposes.

THE COURT:  Okay.  All right.

I think this application was made by Mr. Dienst.
You're here, sir, on behalf of NBC Universal?

MR. DIENST:  Yes, Your Honor.

THE COURT:  All right.  I've reviewed your letter.
I don't believe that there is any legal authority to direct
the government to provide the information that they have
about the case under these circumstances so I'll deny your
application.

MR. DIENST:  Thank you for your consideration.

THE COURT:  All right.  Ms. Cesare, is there
anything further?

MS. CESARE:  No, thank you.

THE COURT:  Okay.

(Time noted:  12:34 p.m.)

(Proceedings adjourned.)

*Lisa Schwam, RPR, CRR, RMR*
*Official Court Reporter*